BACARDI MANUFACTURING JEWELERS, CO., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bacardi Mfg. Jewelers Co. v. Commissioner
Docket No. 4329-76.
United States Tax Court
T.C. Memo 1978-361; 1978 Tax Ct. Memo LEXIS 147; 37 T.C.M. (CCH) 1503; T.C.M. (RIA) 78361; September 13, 1978, Filed *147 Martin E. Litwin, for the petitioner. William L. Ringuette, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in the petitioner's Federal income tax for its taxable year ending August 31, 1972, in the amount of $ 3,031.89. Respondent also determined that an addition to tax under section 6653(a) [1] in the amount of $ 151.59 was owing for the same taxable year. The issues remaining for our decision are: 1. Whether or not petitioner is entitled to an additional deduction for cost of goods sold of $ 11,000. 2. Whether petitioner underreported gross receipts by $ 2,781.31. 3. Whether any overstatement of cost of goods sold or underreported income was due to negligence or intentional disregard of the rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Petitioner is B.M.J. Manufacturing Jewelers, Co., (formerly Bacardi Manufacturing Jewelers, Inc.). Petitioner is an Illinois corporation, *148 incorporated on June 12, 1968, and its principal place of business at the time of filing the petition in this case was Five South Wabash Avenue, Chicago, Illinois. Petitioner filed its U.S. Corporate Income Tax Return (Form 1120), for the taxable year ended August 31, 1972 with the District Director of the Internal Revenue Service, Midwest Regional Service Center, Kansas City, Missouri, on February 16, 1973. Petitioner's principal business activity during its taxable year ended August 31, 1972, was the manufacture, repair, and sale of jewelry. The petitioner's principal officers during the taxable year were Howard Block, president, and Sherwin Pomerance, secretary-treasurer. Mr. Block also purchased and sold jewelry on his own account. The petitioner claimed a deduction of $ 340,886.02 on its U.S. Corporate Income Tax Return (Form 1120) for the taxable year in issue for cost of goods sold. Respondent, in his notice of deficiency, disallowed $ 11,000 of the deduction. The disallowance related to two checks totaling $ 11,000 made out to J. Lloyd (Lloyd's Detective Agency, 176 W. Adams Street, Chicago, Illinois). Both of the checks, one for $ 5,000 and one for $ 6,000, were *149 dated in May of 1972. Lloyd's Detective Agency was a partnership engaged principally in the private security business. The partnership was owned equally by Mr. Lawrence Mayer and Mr. Lee Buslik. Mr. Mayer and Mr. Buslik occasionally accepted jewelry from Mr. Block and sometimes from B.M.J. corporation for sale on consignment. At about the time the two checks in question were issued to J. Lloyd, Mr. Mayer endorsed the checks as an accommodation to Mr. Block. Additionally, at about the same time, Mr. Mayer signed a receipt for items of expensive jewelry that were (according to the heading on the receipt) "received back from Howard Block." On January 3, 1972, National Lead Company, Goldsmith Division, made out a check for $ 1,461.60 payable to the order of Howard Block. This check was endorsed by Mr. Block individually and cashed or deposited on January 4, 1972. Similarly, National Lead Company, Goldsmith Division, made out a check for $ 1,319.71 payable to Howard Block on April 14, 1972. On the same day the check was endorsed by Mr. Block individually and cashed. Both checks (totaling $ 2,781.31) were payable to and endorsed simply "H. Block". Neither the payee nor the *150 endorsement suggest in any manner that the checks were made payable to and endorsed by Mr. Block in his representative capacity for the petitioner. OPINION The issues we confront are entirely factual. The first issue concerns the two checks totaling $ 11,000, that petitioner B.M.J. corporation claimed as a part of its cost of goods sold. The checks, which were stipulated into evidence, were made payable to J. Lloyd and endorsed by Mr. Mayer. Aside from these checks, there is no evidence that the money was used to buy merchandise that would qualify as cost of goods sold by petitioner. The checks could have been for a number of purposes, some of which may or may not have been deductible. J. Lloyd was apparently a detective agency that also handled goods on consignment for petitioner. However, we were shown no invoices or purchase orders, and these checks cannot be associated with any particular merchandise. A document was stipulated that is signed by Mr. Mayer of J. Lloyd's on March 3, 1972, indicating that he "received back from Howard Block" a number of items of expensive jewelry. However, there is nothing to associate the checks in question with this merchandise, and there *151 appears to be no reason why petitioner would be issuing checks to J. Lloyd in connection with a transaction where it also provided merchandise to J. Lloyd. [2]
It is apparently petitioner's theory that the merchandise which is generally referred to in less than clear language in the document of March 3, 1972 was merchandise that Mr. Block received from the Lloyd Detective Agency for resale, and that the check was in payment of this merchandise. However, there is simply insufficient documentation in the record to conclude that the merchandise went in one direction and the check in another. Quite the contrary, it appears that the check was made out to J. Lloyd, and the merchandise was returned to J. Lloyd. Mr. Mayer testified that he recognized his signature on the document. He also testified that around the time the checks were made out and the document prepared, he endorsed the checks as an accommodation *152 to Mr. Block, and that this was the purpose of the checks. However, he could recall nothing about the circumstances of having cashed the checks. Additionally, he could only identify his signature on the document listing the jewelry he received back. He had almost a complete lack of memory of any of the events involving the rather large sums represented by the checks and the somewhat unusual circumstances of their being cashed. Although he conceded signing the list indicating receipt of a number of items of expensive jewelry (one listed as being worth $ 12,000 alone) he was unable to indicate anything about the nature of the jewelry, the origin of the receipt, the contents of the document, the proximity of the document's date to the large checks here involved ($ 11,000), the circumstances under which the documents were prepared, or who prepared them. We have grave suspicions about Mr. Mayer's almost total lack of recall of these events involving such large sums and do not rest our opinion on his testimony alone. Nevertheless, petitioner has the burden of proof. We must conclude that petitioner has on the record before us failed to substantiate its deduction for cost of goods *153 sold. The second issue concerns whether two checks from the National Lead Company (apparently for merchandise) totaling about $ 2,700 were income to petitioner B.M.J. corporation. The principal stockholder and president of petitioner was Howard Block. Mr. Block purchased and sold expensive items of jewelry. This was also the business of petitioner corporation. The checks in question were made out to and endorsed by Mr. Block individually. The respondent's only witness on this issue, a special agent who interviewed Mr. Block in connection with the investigation of another taxpayer, testified that Mr. Block told him he was using the money to buy opals or as a cash reserve in case the corporation needed added money. Either the checks from National Lead Company were handled in a highly improper manner by all concerned since they were made out to and cashed by petitioner, or they were Mr. Block's funds associated with his individual transactions and individual bank account. The respondent's case against the corporation is based on the former theory. Yet the special agent, although he interviewed Mr. Block twice, did not ask him about this glaring impropriety. Although a direct *154 inquiry concerning the ownership of the funds would have been in order, respondent's agent unequivocally stated that he did not ask this question on either of at least two interviews that he had with Mr. Block, and the agent repeated this statement several times without any vacillation. This sequence of events is hard to reconcile with respondent's theory that these funds belonged to the corporation rather than to Mr. Block. We believe that with Mr. Block being deceased, the stipulated checks being made out to and cashed by Mr. Block on an individual basis, and the inferences that must be drawn from the special agent's testimony, the presumption of correctness in the deficiency notice has been overcome. At the very least, respondent had the responsibility to come forward with some evidence supporting his theory on this issue. As noted, his only witness was the special agent, and we believe that on balance, the inferences to be drawn from his rather circumlocutions testimony are distinctly favorable to Mr. Block. [3] We, therefore, hold for petitioner on the second issue. *155 The third issue concerns the propriety of the negligence penalty under section 6653(a). Section 6653(a) imposes a penalty equal to 5 percent of an underpayment that is "due to negligence or intentional disregard of rules and regulations." The burden of proof on this issue is on the petitioner. Petitioner claimed $ 11,000 in cost of goods sold solely on the basis of two checks made out to J. Lloyd under ambiguous circumstances. No books and records were offered to substantiate this deduction. The checks were not associated with purchase orders, invoices, or other documents that would qualify as business records. We, therefore, have no alternative but to sustain respondent on this issue. Decision will be entered under Rule 155
Footnotes
1. Unless otherwise stated, all section references herein are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue.↩
2. Additionally, since Mr. Block (now deceased) also dealt in jewelry on his own account, the merchandise specified in the document may have belonged to Mr. Block individually rather than petitioner. The document mentions Howard Block, but does not refer to petitioner.↩
3. There was some very inconclusive testimony about an affidavit the special agent unsuccessfully encouraged Mr. Block to sign that apparently would have been favorable to respondent's theory of the case. However, the deceased and the special agent disagreed as to some part of the proposed affidavit, and the special agent referred to a second affidavit that was apparently at one time or another the subject of some proposed corrections. It is crystal clear that Mr. Block, who as noted is now deceased, disagreed with some parts of the affidavit or affidavits. It is also crystal clear that he did not sign any affidavits. We are simply unable to infer anything adverse to petitioner on the basis of these circumstances.↩